Robert J. DAVIDSON, JR., Plaintiff,

v.

John L. COOK, et al., Defendants,

v.

AETNA LIFE & CASUALTY CO., et al., Third-Party Defendants.

Civ. A. No. 81–0913–R.

United States District Court, E.D. Virginia, Richmond Division.

Sept. 14, 1984.

William N. Pollard, Parker, Pollard & Brown, Richmond, Va., Richard J. Clair, Natl. Right to Work Legal Defense Foundation, Inc., Springfield, Va., C. Allen Riggins, Parker, Pollard & Brown, Richmond, Va., for plaintiff.

Robert E. Paul, Arlington, Va., and Gerald M. Feder, and David R. Levin, Feder & Edes, Washington, D.C., for defendants Wilson, Jernigan, Parker, Singer and Gifford.

Archibald Wallace, III, George Edgar Dawson, III, Sands, Anderson, Marks & Miller, Temple W. Cabell, Richmond, Va., for defendant Zahn.

Anthony F. Troy, Mays, Valentine, Davenport & Moore, Richmond, Va., for defendant Singer, Individually.

Hullihen W. Moore, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., for defendants Jernigan and Wilson, Individually.

Francis T. Eck, Hooker & Eck, Richmond, Va., for defendant Parker, Individually.

John G. Colan, Wells, Axselle, Hundley & Johnson, Richmond, Va., for defendant Gifford, Individually.

Jay J. Levit, John B. Mann, Levit & Mann, Richmond, Va., for defendants Cook, Van Fossen, Noonan, Bowles and Nash.

Louis Mezzullo, Richmond, Va., and James F. Stutts, McSweeney, Stutts & Burtch, Richmond, Va., for defendants Accardi and Baker.

James E. Moore, Gregory S. Hooe, Cohen, Abeloff & Staples, Richmond, Va., for defendant Koch.

Thomas M. Hogan, Mahoney, Hogan, Heffler & Heald, McLean, Va., for 3rd party defendants Aetna and Standard.

E. Milton Farley, III, Joseph C. Kearfott, John Jay Range, Hunton & Williams, Richmond, Va., for 3rd party defendants McGuire and Woods.

1. Those defendants are: the Estate of Willie M. Zahn (the late Mr. Zahn was formerly the administrator of the Fund), and trustees Accardi, Baker, Cook, Koch, Nash, and Van Fossen.

2. These claims were, essentially: (i) failure to discharge duties for the exclusive purpose of providing benefits to participants and their ben-

## MEMORANDUM

MERHIGE, District Judge.

The instant issue, now ripe for disposition, involves a dispute over the amount of attorneys' fees, for which some of the defendants[1] (hereinafter sometimes "the lending trustees and Zahn," or "the liable defendants," or "the fee-liable defendants") were made liable to plaintiff pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and this Court's order of June 30, 1983.

*Background*

The facts of the case are extensively set out in the memorandum accompanying the Court's order of June 30, 1983. *See David-son v. Cook*, 567 F.Supp. 225 (E.D.Va. 1983), *aff'd*, 734 F.2d 10 (4th Cir.1984) (summary affirmance). The Court here recapitulates some of the more salient facts to provide an appropriate background for the Court's conclusions expressed herein.

Plaintiff is a participant in a trust fund (the Fund) that provides health and welfare benefits. The Fund was established by a union local and a contractors' association in 1968, and is covered by certain provisions of the Employment Retirement Income Security Act of 1974 (ERISA). The instant suit was based on alleged violations, by various trustees and administrators of the Fund, of duties that ERISA creates for the administration of such funds. The alleged breaches of duties arose out of several events occurring primarily between 1975 and 1977, concerning an under-secured construction loan (hereinafter "the Loan"), the amount of which ranged from 1 million to 1.5 million dollars, that the Fund had made to a building corporation, which was a wholly-owned subsidiary of the union local involved in establishing the Fund. The Loan accounted for most of the assets of the Fund.

Plaintiff pursued nine separate ERISA claims against defendants.[2] He sought es-

eficiaries (29 U.S.C. § 1104(a)(1)(A)); (ii) failure to discharge fiduciary duties prudently (29 U.S.C. § 1104(a)(1)(B)); (iii) failure to diversify investments unless clearly prudent not to do so (29 U.S.C. § 1104(a)(1)(C)); (iv) failure to discharge duties in accordance with documents and instruments governing the plan; (v) knowing participation in or concealment of breaches

sentially three types of relief: a monetary judgment for the losses that the Fund sustained because of the Loan; divestiture of the Loan; and replacement of the trustees and administrator who were in office when the suit was filed with new trustees appointed by the Court.

On three of his nine claims, plaintiff prevailed against the lending trustees and Zahn. With respect to relief, the Court refused to order divestiture of the loan or replacement of the Trustees and Administrator who had subsequently taken office. The Court did, however, require the lending trustees and Zahn to make good to the Fund the losses they caused by their imprudent investment in the loan. The Court determined that loss to be $440,800, and ordered the lending trustees and Zahn to pay that amount to the Fund, with interest at the legal rate from February 28, 1982.

In its memorandum of June 30, 1983, the Court held that the plaintiff was entitled "to collect *reasonable* counsel fees" from the liable defendants. 567 F.Supp. at 242 (emphasis original). As initial guidance for the parties in their discussions of counsel fees, the Court remarked that "plaintiff will not be allowed to recover counsel fees for any duplicative work performed by his various teams of lawyers or for work performed in pursuit of his unsuccessful claims." *Id.* Plaintiff has now submitted a request for counsel fees of $435,886.26. The liable defendants contend that anything over $100,000 would be excessive. The respective positions, for the reasons which follow, are doomed to disappointment.

### I. *General Legal Principles Governing Attorneys' Fee Awards.*

■ The Court is satisfied that the applicable law for determining attorneys' fee awards in ERISA cases is analogous to the law on fee awards in other substantive areas of the law, which is relatively well developed, especially in civil rights matters. *See, e.g., Blum v. Stenson,* ⸻ U.S. ⸻, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and cases cited therein. The principles so enunciated have been held applicable in determining the proper amount of attorneys' fees in ERISA cases as well. *See Dependahl v. Falstaff Brewing Corp.,* 496 F.Supp. 215, 217 (E.D. Mo.1980), *aff'd,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 1084, 102 S.Ct. 512, 641, 70 L.Ed.2d 384, 619 (1981). The parties here do not dispute the applicability of the law of attorneys' fees derived in the context of civil rights cases, and the Court will apply those principles.

■ District courts are obliged to set out "detailed findings of fact" concerning attorneys' fee awards, in relation to twelve factors.[3] *Barber v. Kimbrell,* 577 F.2d 216, 226, 226 n. 28 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). The Court of Appeals for the Fourth Circuit has further specified the appropriate approach to attorneys' fee determinations in *Anderson v. Morris,* 658 F.2d 246 (4th Cir.1981). The basic approach is to multiply the customary hourly rate for the services rendered by the number of hours reasonably expended; this

---

of fiduciary duties by co-fiduciaries (29 U.S.C. § 1105(a)(1)); (vi) failure to make reasonable efforts to remedy breaches of fiduciary duties, by co-fiduciaries; (vii) fiduciaries causing the fund to engage in loans to a party in interest (29 U.S.C. § 1002(14)); (viii) fiduciaries causing the fund to transfer assets to a party in interest (29 U.S.C. § 1106(a)(1)(D)); and (ix) fiduciaries acting on behalf of a party whose interests are adverse to those of the plan, in a transaction involving the plan (29 U.S.C. § 1106(b)(2)).

**3.** Those twelve often-recited factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

product is then adjusted on the basis of other factors among the twelve recognized in *Barber v. Kimbrell, supra,* as appropriate considerations in awarding attorneys' fees. *Anderson, supra,* 658 F.2d at 249.

 The Supreme Court has recently endorsed approaches to attorneys' fee determinations similar to the formulation articulated by the Court of Appeals for the Fourth Circuit in *Anderson. See Blum v. Stenson, supra,* 104 S.Ct. at 1543–44; *Hensley v. Eckerhart, supra,* 103 S.Ct. at 2939–40. In addition, the Supreme Court in *Hensley* emphasized the importance of the relationship between "results obtained" and the fee award. If a plaintiff does not prevail on claims that are "unrelated" to the claims on which the plaintiff succeeded, in a case where plaintiff is held entitled to attorneys' fees, the district court should not award fees for services rendered in the unsuccessful, unrelated claim. *Hensley, supra,* 103 S.Ct. at 1940. Second, the Court must consider whether plaintiff's level of success makes the hours reasonably expended a satisfactory basis for making a fee award. *Id.*

## II. *Reasonable Hourly Rates*

The parties dispute the reasonable hourly rates for plaintiff's four attorneys in this action. The four attorneys for plaintiff were Messrs. Riggins, Pollard, Kuykendall, and Clair. The first three worked in the same law firm for most of the duration of this suit. Clair was not a member or employee of that firm; rather, he was a salaried employee of the "National Right to Work Legal Defense Foundation, Inc."

Plaintiffs contend that the appropriate hourly rates here are: $125 for Riggins and Pollard; $100 for Kuykendall and Clair. To establish these rates, they rely on a single affidavit of a Richmond attorney, Robert Geary, which states that in "labor, employment, and civil rights cases," the "customary fee" in the Eastern District of Virginia ranges from "$80 to $125 per hour," depending on the experience of the attorney and the complexity of the case.

Defendants assert that the rates that plaintiff's attorneys actually charge their clients who agree to pay on a monthly basis for litigation are the appropriate hourly rates. Defendants use the rates that plaintiffs attorneys themselves display, in Plaintiff's Brief, and derive the following rates: Riggins, $75; Pollard, $77.50; Kuykendall, $50.[4] Defendants acknowledge that Clair's services should be compensated at market rates despite the fact that he is a salaried employee, following the Supreme Court's holding in *Blum* on attorneys' fees for civil rights attorneys employed by non-profit legal aid offices. *See Blum, supra,* 104 S.Ct. at 1547. They assert that his hourly rate, generously figured, would be $75.

The rates that plaintiff's counsel actually charge are an ideal starting point. As the Supreme Court noted in *Blum,*

> ... determining as appropriate "market rate" for the services of a lawyer is inherently difficult....
>
> ... the burden is on the fee applicant to produce satisfactory evidence ... that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

*Blum, supra,* 104 S.Ct. at 1547 n. 11. Plaintiff's attorneys' actual billing rates are perhaps the best possible indicator, in this case,[5] of the market rates in the community "for similar services by lawyers of reasonably comparable skill, experience and reputation." By contrast, the affidavit

---

4. Plaintiff's Brief does not provide a single hourly rate for Riggins and Pollard; rather, it provides a range of $70–80 for Riggins, and $75–80 for Pollard. Defendants averaged these rates to derive the rates proffered.

5. There is no evidence that plaintiff's counsels' rates are *inflated* in relation to the rates of other attorneys in the community for similar services.

On the other hand, although plaintiff's counsels' hourly rates do appear to be somewhat lower than the hourly rates for the Fund's counsel, plaintiff has not shown (or even argued) that the rates his counsel themselves have set are not the customary market rates for their litigation services to clients who pay from month to month on an hourly basis.

of Mr. Geary on which plaintiff relies is, of necessity perhaps, extremely general. Further, the rates that plaintiff asserts are proper appear to be well above the rates paid by the Fund to its counsel, which generally ranged from $85 to $100 per hour for partners and from $60 to $75 per hour for associates, *see* Current Trustees' Report on Litigation Expenditures, at 13, which provides some additional indication of prevailing market rates.[6]

Plaintiff objects to using his counsels' customary hourly rates primarily because those rates are charged to clients who pay by the hour on a monthly basis for litigation. By contrast, this suit was undertaken on a contingent basis, and the contingent basis of representation is an appropriate factor to be considered in awarding attorneys' fees. *See Anderson, supra,* 658 F.2d at 248 n. 2; *see also Blum,* 104 S.Ct. at 1551 (Brennan, J., concurring). But plaintiff has not given any explanation, by way of risk analysis or anything else, for the extent of his upward adjustments here, which range from 65% to 100%. Yet counsel must have been reasonably secure in their view that they would prevail in the suit, given the extensive time they devoted to it, as well as the fact that they accepted employment on a contingent basis.

■ The Court finds that an upward adjustment of 20% to counsel's ordinary hourly rates provides a reasonable hourly rate for plaintiff's counsel here. Thus, for Mr. Riggins the reasonable hourly rate is $90; for Mr. Pollard the reasonable hourly rate is $93; and for Mr. Kuykendall the reasonable hourly rate is $60. The reasonable hourly rate for Mr. Clair, who does not practice at a firm, can be extrapolated as follows. In plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion to the Amount of Attorneys' Fees, plaintiff submitted a rate for Clair that was the same as the rate submitted for Kuykendall. A reasonable inference is that plaintiff's

counsel valued Clair's and Kuykendall's services as equivalent. Mr. Clair's reasonable hourly rate should therefore be the same as Mr. Kuykendall's: $60.

### III. *Reasonable Hours*

The parties also dispute the reasonable number of hours for which plaintiff's counsel should be paid. For his four attorneys, plaintiff seeks compensation for 4,757.9 hours. Defendants insist that this time is excessive for the work involved, and probably includes a large amount of duplicative or unnecessary effort. They point to a number of specific examples from plaintiff's counsels' records to illustrate their point.

Plaintiff has already deducted some hours from his grand total to arrive at the net figure of 4,757.9 hours for his four attorneys.[7] He has subtracted: (i) time attributable to having more than one attorney assist in the preparation and taking of depositions, except for one deposition that his attorneys consider especially important; (ii) time spent traveling between Richmond (where the office of three attorneys was located) and Springfield, Virginia (where Clair's office was located), for conferences, depositions, and hearings; (iii) time spent on "some matters extraneous to the Davidson case;" and (iv) some other reductions. In addition, plaintiff has deducted time spent on some of the work connected with unrelated claims on which he failed. These total deductions amounted to 848.7 hours. It is unclear how many hours were deducted for any one of the five types of expenditures that plaintiff has deducted, however.

Plaintiff has also deducted 25% across the board from the total amounts he seeks. Although he applies this deduction to the total dollar amounts, including expenses, his basis for the deduction is, at least in part, for "overlap between recoverable and non-recoverable time." Plaintiff's Supple-

---

6. One of the Fund's attorneys, a nationally prominent expert in multiemployer plans, apparently was compensated at $125 per hour, according to the Current Trustees' Report on Litigation Expenditures.

7. Plaintiff has also submitted hours (and rates) for paralegals and interns. The total is 624.55 hours, after reductions of 15.05 hours.

mental Memorandum in Support of Plaintiff's Motion to Fix the Amount of Attorneys' Fees, at 4. In effect, plaintiff has reduced the hours for which he seeks compensation by an additional 25%.[8] This apparently includes reductions for work on unsuccessful, unrelated claims as well as for excessive and redundant work.

### A. *Reductions for Excessive or Redundant Work*

■ As the Supreme Court has noted, determining reasonable hours includes some exercise of "billing judgment" to eliminate hours that are "excessive, redundant, or otherwise unnecessary." *Hensley, supra,* 103 S.Ct. at 1939–40. The Court appreciates the attempts of plaintiff's counsel to exercise billing judgment here, and has no doubt that their judgment was exercised in all good faith. Indeed, the preliminary deductions of specific hours, bringing the number of hours for which plaintiff seeks compensation for his counsel down to 4,757.9 hours, are an appropriate start. But it is the Court's duty to determine the number of hours reasonably expended by plaintiff's counsel; and the Court concludes that the hours submitted by plaintiff's counsel should be reduced further in the following manner, to account for excessive or redundant work.

The Court notes that four attorneys worked on plaintiff's case, out of two different offices. The work for which they seek fees spans three years. Apparently the need to coordinate plaintiff's litigation efforts among the four attorneys and two offices has required a good deal of excessive or redundant work. In any case, some of the time spent by plaintiff's counsel on specific matters is clearly excessive.

Defendants have called attention, for example, to the time that plaintiff's counsel spent directly related to the drafting of a final complaint. Four attorneys spent a full 125.3 hours on this project over five days. This followed over six months of initial investigation. *See* Defendant's Response, at 11–12. Plaintiff responded that this expenditure of time is fully justified, setting out the work involved in that five-day period. Plaintiff's Reply, at 5–6. The Court disagrees. While this case was not without complexity, over three weeks of billable hours is, in this Court's judgment, nevertheless excessive.

As another example of excessive time, the Court notes the number of hours spent on what plaintiff described as Phase IX of the litigation. *See* Plaintiff's Supplemental Memo, Ex. 1. Phase IX includes preparation of various attorneys' fee motions and supporting date, and preparation of the bill of costs, as well as all matters related to the appellate stage of the suit, and settlement conferences (presumably about attorneys' fees). Plaintiff's counsel spent 561.25 hours on this phase, *after* their specific reductions. Paralegals and interns spent an additional 94.6 hours, after specific reductions. While plaintiff's counsel have not broken down the time spent on specific matters in any more detailed way, which would facilitate determinations about reasonableness, the Court nevertheless is satisfied, in this instance, that fourteen full weeks of billable attorney time is excessive. Assuming that much of the time spent on preparing the documentation of attorneys' fees was by paralegals (as it could have been), most of the 561.25 hours of attorney time was spent on essentially two matters: settlement conferences on at-

---

**8.** The Court points out that plaintiff's 25% across-the-board reduction is *not* accounted for in the 4,757.9 net hours for which plaintiff seeks counsel fees. But the effect of the 25% reduction is to reduce the hours for which he seeks compensation by 25%—from 4,757.9 hours, to 3,568.4 hours. (Of course, because plaintiff applies the 25% reduction across the board, thereby reducing expenses as well as attorneys' reasonable time, his proposed 25% reduction would reduce the ultimate fee award by more than if he had applied the 25% reduction only to attorneys' compensable time.)

The Court clarifies here that the percentage reductions that the Court orders in the following pages are *not in addition to* plaintiff's proposed 25% across-the-board reduction. Rather, they are in lieu of that 25% reduction, based on the Court's independent determination of the proportion of plaintiff's counsels' time that was for: (i) redundant or excessive work; and (ii) unsuccessful, unrelated claims.

torneys' fees, and the appeal. As defendants point out, the appeal was not plaintiff's, and the legal issues had already been exhaustively briefed before the district court. Fourteen full weeks of billable attorney time is simply more than should be compensated for, given the matters involved.

■ As it has already remarked in the context of plaintiff's "Phase IX," the plaintiff has not presented the hours expended in this case in a way that especially facilitates determinations of reasonableness, although in fairness plaintiff has, in Plaintiff's Supplemental Memo, broken the litigation down into phases that does provide some help. Based on its general review of the hours spent in the various phases, and further supported by its consideration of the specific examples discussed *supra*, the Court finds that the hours submitted by plaintiff after specific reduction (totaling 4,757.9) should be reduced by 30% to eliminate excessive or duplicative, expenditures of time.

### B. *Reductions for Work on Unsuccessful, Unrelated Claims*

In addition, time spent on totally unrelated claims on which plaintiff did not succeed should also not be compensated, as discussed *supra*. As the Supreme Court has recognized, there is "no certain method of determining when claims are 'related' or 'unrelated.'" *Hensley, supra,* 104 S.Ct. at 1941 n. 12. In this case, the Court is satisfied that a number of plaintiffs' claims on which he did not prevail are unrelated to the claims against the lending trustees and Zahn on which he did prevail.

Plaintiff sued a number of the Fund's trustees besides those who were in office at the time of the original loan and its supplementation (both of which occurred in 1975). Those included, among others, trustees who were in office at the time the suit was filed. He failed to prevail on any of his claims against any of these defendants.

Although the legal basis for suit against them was generally the same as the legal basis for suit against the lending trustees and Zahn, the relief he sought that affected them included their removal from the Fund's board, as well as liability for the Fund's losses arising from the Loan. Further, the specific incidents giving rise to these unsuccessful claims were a "cure" of the Loan in 1977 and a waiver of late payment fees in 1980, not the making of the original or supplemental loan in 1975, on which the liability of the lending trustees and Zahn arose. Thus, the Court finds that, given the different nature of the relief sought and the different factual context out of which the claims arose, all plaintiff's claims against any of the defendants, other than his claims against the lending trustees and Zahn are unrelated, even though they are based on many of the same sections (or subsections) of ERISA as his claims against the lending trustees and Zahn.

Thus, because plaintiff's counsel are not entitled to compensation for unrelated, unsuccessful claims, the hours spent on those matters should be subtracted out. Plaintiff has already deducted some time for hours so spent. Specifically, he has deducted: time spent on depositions of defendants against whom he did not prevail, and depositions of some other people whose depositions were related to his claims against those defendants; time spent on trustee Singer's interrogatories and his motion for a more definite statement; and time spent working with a CPA to prepare a loan accounting, as well as time spent preparing for some of the depositions that plaintiff excluded. Plaintiff's Supplemental Memo, at 3. But, as defendants point out, plaintiff has failed to exclude any time related to the preparation of briefs, office memoranda, and research, related to those unsuccessful issues. Plaintiff's record keeping makes it impossible for this Court to separate out specific conferences, telephone conversations, research sessions,[9]

---

**9.** Much of the purely legal preliminary research should not be subtracted out of the work for

which plaintiffs should be compensated, however. It would have been done with respect to

and preparation periods related to these claims.

■ It would be inappropriate for the Court to tally up the number of claims on which plaintiff in any way prevailed (three of nine), or the forms of relief that plaintiff succeeded in obtaining (one of three), and then mechanically to reduce plaintiff's hours on a simplistic, *pro rata* basis. *See Hensley, supra*, 103 S.Ct. at 1940 n. 11. But given the nature of plaintiff's work records, the Court must adopt some inevitably inexact method for separating out work on unsuccessful, unrelated claims. Plaintiff indicated that 25% reduction for the overlap between recoverable and non-recoverable time is appropriate. No doubt some of this reduction was for excessive and duplicative work as well as for work on unsuccessful, unrelated claims. The Court finds it reasonable to infer that plaintiff's counsel intended at least a reduction of 15% to account for work on unsuccessful, unrelated claims. This seems especially fair in light of plaintiff's counsels' limited view of what constitutes excessive work, as evidenced by their defense of the number of hours spent during various phases of the litigation. *See, e.g.,* Plaintiff's Reply Brief, at 5–9. Accordingly, in addition to the 30% deduction for excessive or duplicative work, 15% should be subtracted from the net hours submitted by plaintiff's counsel (4,757.9 hours) to account for work on the unrelated, unsuccessful claims.[10]

Thus, plaintiff's net counsel time of 4,757.9 hours should be reduced by an additional 45% to account for (i) excessive or duplicative work, and (ii) work on unrelated, unsuccessful claims. The same percentage reduction should be applied to each attorney's net hours.

Plaintiff applied his 25% across-the-board reduction to expenses, and to the work of his counsels' paralegals and clerks. It is appropriate for the Court to apply its reduction of 45% to those categories as well. Where some proportion of attorneys' hours were excessive or were for unrelated, unsuccessful claims, the Court can fairly infer that costs and work by paralegals and interns was excessive or was for unrelated, unsuccessful claims in the same proportion, absent contrary evidence.

The Court's conclusion that counsels' compensable hours should be reduced is not to be viewed as a lack of confidence in counsels' representations as to the time expended. The fact is that counsel, in the Court's view, have engaged in legalistic "over-kill." Counsel's enthusiasm and desire to dot every "i" and cross every "t" is commendable—when the dotting of every "i" and the crossing of every "t" is necessary to protect a client's interest. When it is not, as in the instant case, counsel's compensation must be in the form of self gratification—not the currency of the litigants. Rarely is there a case in which more hours could not be spent. The test, however, is what is reasonable to protect a client's interest. Beyond that point, "over-kill" should be reserved for nonremunerative scholarly endeavors or legal "bull sessions" as most members of our profession are prone to engage in from time to time—enjoyable and frequently enlightening—but not compensable.

Having made these determinations, the Court can hopefully compute what it deems to be a fair and reasonable attorneys' fee. The computations are as follows:

the claims against the lending trustees and Zahn anyway. Most of plaintiffs' legal claims against the defendants against whom plaintiffs lost are based on the same ERISA provisions as plaintiff's successful claims against the lending trustees and Zahn. Nevertheless, legal research on how those claims apply to the particular facts of the defendants against whom plaintiffs lost— predominately the interim and later trustees of

the Fund—would not be related, and plaintiff's counsel should not be compensated for it.

10. The Court here refers to Note 8, to emphasize that the percentage-reductions it finds appropriate are *not in addition to* plaintiff's 25% across-the-board reduction. Rather, they are in lieu of that reduction, based on the Court's own consideration of the appropriate reductions.

A. Fees

| Attorney/ Paralegal/ Intern | (a) Reasonable Rate per Hour | (b) Net Hours | (c) Net Hours Less 45% Reduction | (d) Reasonable Fee (a × c) |
|---|---|---|---|---|
| Riggins | $90 | 1465.35 | 805.94 | $ 72,534.60 |
| Pollard | 93 | 1093.65 | 601.51 | 55,940.43 |
| Kuykendall | 60 | 303.95 | 167.17 | 10,030.20 |
| Clair | 60 | 1894.95 | 1042.22 | 62,533.20 |
| Parker | 30 | 60.9 | 33.50 | 1,005.00 |
| Burke | 25 | 483.15 | 265.73 | 6,643.25 |
| O'Reilly | 25 | 5.0 | 2.75 | 68.75 |
| Royce | 25 | 9.0 | 4.95 | 123.75 |
| Mast | 30 | 33.0 | 18.15 | 544.50 |
| Macri | 30 | 33.5 | 18.43 | 552.90 |
| | | | Reasonable fees: | $209,976.58 |

B. Expenses: $24,843.42
 45% reduction: 11,179.54

Reasonable expenses: $ 13,647.38

Award of reasonable attorneys' fees and expenses: $223,623.96

---

IV. *Relationship Between Fee Award and Results Obtained*

The fee-liable defendants have insisted that the Court adjust the plaintiff's fee award downward because of the limited nature of the relief obtained, citing the Supreme Court's recent decision in *Hensley*. They maintain that, under the facts of this case, *Hensley* compels a downward adjustment. The fee-liable defendants focus on the costs to the Fund arising out of the Fund's defense of its own position against plaintiff's unsuccessful attempt to remove the Fund's trustees and require divestiture of the Loan, as well as the Fund's costs for reimbursable individual representation of the trustees in office for their own legal defense. That total cost to the Fund, defendants assert, was over $390,000. *See* Defendants' Response, at 21. Assuming arguendo that the order for damages that plaintiff obtained for the Fund against them was between $500,000 and $600,000 (including interest), the fee-liable defendants argue that the ultimate "result obtained" for the Fund was somewhere under $200,000. Therefore, their reasoning goes, only a fee award of $100,-000 or less could bear any reasonable relationship to the results obtained, as required by *Hensley*.

The Court rejects this argument. First, the fee-liable defendants should note that whether the Fund will ultimately be deprived, in whole or in part, of the money expended on its own defense and on fees for the individual representations of trustees in office, is uncertain at this point. The Fund is currently attempting to recover those costs from its insurance carriers. Given the contingent nature of whether the Fund's litigation expenditures will be a permanent loss to the Fund, the Court finds that any such conclusion would be speculative, and the Court rejects the invitation to so engage itself.

Even if the Fund does ultimately lose its litigation expenditures, however, the fee-li-

428

able defendants should not be the ultimate beneficiary of that event. Plaintiffs successfully litigated an order against the fee-liable defendants for over $440,000, plus interest. This was the relief, in its entirety, that plaintiff sought against the fee-liable defendants. The fee and expenses that the Court awards here—$223,623.96—is reasonable in relation to that result.

The Court's rejection of the fee-liable defendants' argument for further reducing the fee award because of the litigation costs to the Fund is supported by policy grounds as well. Plaintiff's attorneys have already been denied recovery for work on their unrelated, unsuccessful claims against which the Fund and the current trustees defended. Thus, the Court's refusal to further diminish plaintiff's fee award does not encourage future plaintiffs to over-litigate ERISA cases in order to garner additional attorneys' fees. If the Court were to further reduce plaintiff's fee award here because of the cost to the Fund of plaintiff's litigation, it would be tantamount to a penalty against plaintiff. This Court has expressly found that plaintiff's claims against the Fund or its current trustees were not pursued in bad faith. *See Davidson, supra,* 567 F.Supp. at 243. A penalty against the plaintiff for pursuing these claims is unwarranted.

One further remark highlights the unreasonableness of the fee-liable defendants' requested fee reduction, based on litigation costs to the Fund. Such a reduction would be the functional equivalent of the Court finding that plaintiff is liable to the Fund for attorneys' fees,[11] and then ordering plaintiff to pay part of those fees to the fee-liable defendants, thus diminishing the fee-liable defendants' liability for fees. The unjustness of such an approach, as well as the skewed incentives it would create in ERISA litigation, is obvious.

An appropriate order will issue.

11. In fact, the Court explicitly found that plaintiff was not liable to the Fund or current trus-

ORDER

In accordance with the memorandum of the Court this day filed, and deeming it just and proper so to do, the Court hereby ADJUDGES and ORDERS that the amount of plaintiff's reasonable counsel fees is $223,-623.96; pursuant to Paragraph 4 of this Court's order of June 30, 1983, the following defendants in this action are liable for these fees: Accardi, Baker, Cook, Koch, Nash, Van Fossen, and Zahn. Judgment is entered against said defendants in accord herewith.

Let the Clerk send copies of this order and the accompanying memorandum to all counsel of record.

tees for attorneys' fees. *See* 567 F.Supp. at 243.