# CIRCUIT COURT OF FAIRFAX COUNTY

Unger et al.

v.

Beatty et al.

## Case No. (Chancery) 164191

BY JUDGE R. TERRENCE NEY

### May 31, 2000

This case came before the Court on May 25, 2000, on Defendants' Petition for Attorneys' Fees.

The underlying case for nuisance, breach of contract, and trespass was filed in December 1999. Plaintiffs and defendants own adjoining parcels of land on Raleigh Hill Road in Vienna (a development known as Hunter Mill Estates) and reside in the houses thereon. The plaintiffs alleged that the defendants planted 24 white pine trees two feet from the parties shared property line (on defendants' side of the line), spaced five feet apart, and one pin oak "virtually" on the property line. They further alleged that the pine trees are each now 10 to 15 feet tall and several feet wide, and that the branches and roots encroach onto the plaintiffs' property. They also alleged that all real property within Hunter Mill Estates is governed by the Declaration of Covenants, Conditions, and Restrictions of Hunter Mill Estates ("Covenants") and that those covenants run with the land. The plaintiffs claimed that the defendants' actions in planting the trees unreasonably interfered with their use and enjoyment of their property and were thus an actionable nuisance (Count I). The plaintiffs also claimed that they were clearly intended to be third-party beneficiaries of the Covenants and that the trees violated the Covenants and were thus a breach of contract (Count II). Finally, the plaintiffs claimed that the encroachment of the tree branches and roots onto their property was

blocking their sprinkler heads and making lawn mowing difficult, thus constituting an actionable trespass (Count III).

On March 10, 2000, this Court sustained the defendants' demurrer to all counts and granted the plaintiffs leave to amend within 14 days. The plaintiffs did not file an Amended Bill of Complaint. This fee petition followed.

The defendants seek to recover their reasonable attorneys' fees and costs on three grounds. First, they argue that none of the claims in the Bill of Complaint was well-grounded in fact and warranted by existing case law and, consequently, they are entitled to recover sanctions for the plaintiffs' or their counsel's violation of Va. Code § 8.01-271.1. Second, they argue that, under Va. Code § 55-515, aggrieved homeowners who prevail in an action brought by the homeowners' association or another homeowner under the Virginia Property Owners Association Act are entitled to recover their reasonable fees and costs incurred. Third, they argue that a contractual provision in Section 21(b) of the Declaration of Covenants, Conditions, and Restrictions of Hunter Mill Estates, the contract under which the breach of contract claim was brought, entitles the prevailing party in any action brought under the declaration to recover reasonable attorneys' fees and costs.[1] The plaintiffs dispute both the defendants' entitlement to recover attorneys' fees on any basis and the reasonableness of the fees incurred.

### Defendants' Entitlement to Attorneys' Fees

While the defendants are correct that Virginia law is clear that no claim for nuisance or trespass lies when the branches or roots of trees, which are not noxious, planted on the land of one property owner extrude onto the land of a neighboring property owner, and no "sensible injury" has been inflicted,[2] the plaintiffs' filing of this lawsuit does not appear to the Court to be grounds for the award of sanctions under Va. Code § 8.01-271.1. That statute is not intended to be a fee-shifting provision, but is intended to punish the egregious conduct of signing a pleading either (1) knowing that it is not well-grounded in fact, or not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; or (2) failing to make reasonable inquiry as to the foregoing. See *United Healthcare Service, Inc. v.*

---

[1] The claim for fees under the contractual provision was not included in the defendants' written fee petition but was argued at hearing. The Court finds that there was no unfair surprise to the plaintiffs because the plaintiffs had included a claim for attorneys' fees under the same contractual provision in their Bill of Complaint.

[2] Smith v. Holt, 174 Va. 213 (1939).

*B. F. Saul Real Estate Investment Trust*, 51 Va. Cir. 68 (1999). Here, the plaintiffs have presented arguments for the modification of existing law — the absence of a clear definition of sensible injury, the change in conditions caused by the modern technology of sprinkler systems, contrary authority from other jurisdictions[3] — that the Court cannot say were not made in good faith. While the Court did not find these arguments to be meritorious, the plaintiffs, nevertheless, should not be sanctioned for making them. Therefore, the Court denies the motion for attorneys' fees as sanctions under Va. Code § 8.01-271.1.

Count II of the Bill of Complaint is a breach of contract claim arising out of the defendant's alleged violations of various sections of the Declaration of Covenants, Conditions, and Restrictions of Hunter Mill Estates. The Declaration states, in Section 21(b)(ii);

> In any proceeding arising because of an alleged failure of an Owner to comply with the terms of this Declaration, the By-Laws and any rules and regulations adopted pursuant thereto, the prevailing party shall be entitled to recover the costs of the proceeding and reasonable attorneys' fees . . . .

Therefore, the Court finds that the defendants are entitled to recover their costs and reasonable attorneys' fees for the defense of Count II of the Bill of Complaint.[4] Because it is not practicable to determine which particular expenses were associated with the defense of which of the three claims, the Court awards the defendants one-third of the total amount of their reasonable attorneys' fees and costs. This award includes one third of the reasonable attorney's fees incurred in bringing this petition for attorneys' fees, as the recovery of attorneys' fees from all stages of the proceedings is allowed (unless specifically excluded) under a contractual attorneys' fees provision. See *Clevert v. Soden, Inc.*, 241 Va. 108 (1991) (remanding to the trial court for award of attorneys' fees expended on successful defense of appeal of trial court's award of attorneys' fees).

As the defendants' entitlement to recover their reasonable attorneys' fees and costs under Va. Code § 55-515 would only apply to attorneys' fees for the defense of Count II, the Court does not find it necessary to reach this issue.

---

[3] *Melnick v. C.S.X. Corp.*, 312 Md. 511, 540 A.2d 1133 (1988); *Sterling v. Weinstein*, 75 A.2d 144 (D.C. 1950).

[4] Counts I and III obviously were not brought pursuant to the Declaration but were rather common law claims. As such, they do not enjoy any provision for the award of attorney's fees.

*Reasonableness of Attorney's Fees*

The defendants introduced evidence of attorneys' fees and costs in the total amount of $42,819.75 incurred through and including the May 25, 2000, hearing.[5] The separate amounts charged are as follows:

| | |
|---|---|
| $19,586.85 | Ross & Hardies (Arthur G. House, Esq.) |
| $19,556.54 | Law Offices of Janis Orfe (Janis Orfe, Esq.) |
| $ 3,426.60 | Blankingship & Keith (John A. C. Keith, Esq., expert witness) |
| $ 249.76 | Ventures in Video (videotape of the subject trees) |

The defendants' expert witness, John A. C. Keith, testified that the fees charged were consistent with those charged by other attorneys in this community for similar services; that the work performed was necessary and appropriate; that the results, the sustaining of the demurrer, were successful and highly beneficial to the client; and that the two attorneys had efficiently avoided the duplication of effort from the beginning of the case up through the filing of the fee petition.[6] He did testify that there had been some unnecessary duplication since the April 7, 2000, filing of the fee petition, for which he considered it appropriate to subtract $3,500.00 from the total amount billed.

The plaintiffs do not challenge the reasonableness of any attorney's hourly rate, but they argue that the staffing of what they describe as an uncomplicated case by two very experienced attorneys in two different law firms was unnecessarily expensive and caused significant duplication of effort. They further argue that many tasks performed, including, for example, five separate site visits and the making of a videotape, were not necessary at the demurrer stage of the litigation. Finally, they argue that an inordinate amount of time was billed on other tasks, especially including the revising of the demurrer.[7]

---

[5] Fees for the hearing itself were estimated. The fees charged by the defendants' expert witness for work performed after April 30, 2000, were based upon his testimony.

[6] Although not specifically discussed individually herein, Mr. Keith provided testimony sufficient to demonstrate the seven elements required to show reasonableness under *Chawla v. BurgerBusters*, 255 Va. 616, 499 S.E.2d 829 (1998).

[7] The plaintiffs' expert witness was not permitted to testify because the plaintiffs failed to identify him to the defendants until the afternoon prior to the hearing, notwithstanding the fact that the defendants had sought that information in discovery due nearly two weeks previously and that plaintiffs' counsel had

The Court finds that the attorneys' fees and costs claimed by the defendants, less the $3,500.00 in duplicative efforts noted by Mr. Keith are not plainly unreasonable, with the following specific exceptions: First, the videotaping of the subject trees was not a necessary expense at the demurrer stage of the proceedings, as it is well-settled that nothing beyond the four corners of the pleadings may be considered by the Court on demurrer. Second, some of the work performed prior to the filing of the fee petition by the two very experienced attorneys representing the defendants appears to the Court to be if not duplicative certainly in excess of the time that should be required to complete the tasks appropriate to that stage of case.

The major reservation the Court has with the amount of fees claimed is that the total amount of the fees — albeit legitimately incurred — seem out of proportion to the nature of the lawsuit. The underlying suit, its successful defense, and the fee claim, were straightforward matters involving nothing especially complex. Simply put, this litigation should not have cost this much. The matter was bitterly contested, however, and so the Court does not fault counsel for its time and efforts, with the possible exception of unnecessary discovery disputes engendered by plaintiffs' counsel during the fee recovery part of the case.

Therefore, the Court calculates the defendants' reasonable attorneys' fees as follows:

| | |
|---|---|
| $42,819.75 | total attorneys' fees and costs claimed |
| - 1,001.25 | already awarded per Order of May 19, 2000[8] |
| - 3,500.00 | reduction for duplicative effort per Mr. Keith's testimony |
| - 5,000.00 | additional reduction by court |
| - 249.76 | cost of videotaping as unnecessary at demurrer stage |
| $33,068.74 | net reasonable attorneys' fees and costs. |

The defendants are awarded $11,022.91, one-third of the total reasonable attorneys' fees and costs.

---

represented to the Court in April that he was seeking a continuance in part to retain an expert witness.

[8] The Court notes that $1,001.25 of the fees claimed by Ms. Orfe were previously awarded to the defendants on May 19, 2000, as a sanction against plaintiffs' counsel for improperly causing the issuance of a subpoena to Mr. Keith.

On May 30, 2000, counsel for the plaintiff had hand delivered a Memorandum of Law with exhibits and cases attached. The thrust of the argument contained in the Memorandum is that this Court is without jurisdiction to decide the application for attorney's fees because more than twenty-one days have elapsed since the fourteen-day period granted to the plaintiffs to amend their Motion for Judgment, that time having expired on April 14, 2000.

The argument is totally without merit. This Court's Order of March 10, 2000, was neither a final order nor an order providing for dismissal of the plaintiffs' suit should the plaintiffs choose not to amend. It was simply an order sustaining a demurrer and allowing the plaintiffs a time certain within which to amend.

> We resolve this issue by a consideration of the effect of an order sustaining demurrers to the merits of a case and dismissing it. If the order merely sustains such a demurrer, it is not a final order; to be final, it must go further and dismiss the case.

*Norris v. Mitchell*, 255 Va. 235, 239, 495 S.E.2d 809, 811 (1998).

Here, the Order of this Court of March 10, 2000, did no more than sustain the demurrer and provide leave to amend within 14 days. By no stretch of the imagination can that be considered a "final order" because it did not provide for dismissal of the suit in the event that the plaintiffs chose not to amend. No Virginia case has ever held that such an order self-executes into a final order under such circumstances.

Moreover, although not necessary to the Court's resolution of this issue, the March 10, 2000, Order specifically stated, "And this suit is continued on the docket of the Honorable R. Terrence Ney." It would be difficult to find, much less fashion, language more at variance with the concept of a final order.

Finally, the March 10, 2000, Order was not a final order because the case was specifically continued on the docket for the sole purpose of an attorney's fee application by the defendants. This was known at the time of hearing, and nothing in the March 10, 2000, Order is inconsistent with that knowledge. Indeed, to the contrary, the Order is exactly in keeping with the anticipation of further proceedings which, in fact, occurred on May 25, 2000.

### June 20, 2000

The Court is in receipt of and has reviewed the Defendant's Motion to Reconsider. The Motion is denied.

Regardless of the Plaintiff's Bill of Complaint, nothing could transform the common law claims of nuisance (Count I) and trespass (Count II) into causes of action falling within the proscriptions of the Declaration.[9] And, unless the claims contained in those counts were within the Declaration, there would be no right to recover attorney's fees for the successful enforcement of the covenants.

Put differently, had there been no Count II in the Bill of Complaint — claiming nuisance and annoyance in violation of the covenants — it could not be seriously suggested that reference to the Declaration in support of Counts I and III, standing alone, would place them within the Declaration. By no stretch of reasoning can pleadings that are drafted either purposefully artfully, on the one hand, or unthinkingly clumsily, on the other, transmute straightforward common law claims into breaches of a Declaration if the Declaration itself does not include them.

This point is well illustrated by the Defendants' Demurrer itself. The objections to Counts I and II were not that they fell without any protection of the Declaration, but rather that they were not legally cognizable under Virginia common law. Not a word had to be written as to whether or not the claims were properly or improperly asserted pursuant to the Declaration.

In short, neither the Complainants' Bill of Complaint nor the defendants' Demurrer could place the common law claims contained in Counts I and III within the terms of the Declaration. That being so, there was no vehicle for the award of attorney's fees.[10]

Moreover, the federal decisions addressing recovery of attorney's fees[11] — and the circumstances under which they may be properly adjusted or reduced — contain an important distinction not present in this case. The federal cases provide a statutory basis for the recovery of fees as to those claims successfully asserted, taking into account the various factors most fully expressed in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). In other words, all claims are presumptively covered at the outset, if recovery occurs. That is not so in this case. Here, only one claim, Count II based on the Declaration, provided for a recovery of attorney's fees to the prevailing party. The other

---

[9] The Declaration of Covenants, Conditions, and Restrictions of Hunter Mill Estates (the "Declaration").

[10] Had the Complainants been successful on those two claims, they too would not have been able to recover attorney's fees for their successful prosecution.

[11] Hensley v. Eckerhart, 461 U.S. 424 (1983); Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1974); Fair Housing v. Landow, 999 F.2d 92 (4th Cir. 1993); Texas State Teachers Assoc. v. Garland Indep. Sch. Dist., 489 U.S. 782 (1989); Spell v. McDaniel, 852 F.2d 762 (4th Cir. 1988).

two claims stood alone entirely. Neither their successful prosecution or defense entitled either party to a recovery of attorney's fees.[12]

Next, the "impermissible ratio" line of cases[13] is inapposite for two main reasons. First, again, the federal cases contain statutory provisions for fee shifting in order to encourage vindication of important public policies.[14] In civil rights litigation, in particular, the overall success of the litigation may be a better gauge of its value than the time expended in pursuing arguably worthwhile but ultimately unsuccessful claims. *Hensley v. Eckerhart*, 461 U.S. 424 (1983). For that reason:

> There is no precise rule or formula for making these determinations . . . . The court necessarily has discretion in making this equitable judgment.

*Hensley* at 461 U.S. 436, 437 (1983).

Such public policy considerations are not a part of this case. Whatever discretion the Court must exercise in determining an appropriate fee involves none of the fee shifting impetus of federal statutes on which all of the cited decisions are based. Yet even those cases provide wide discretion to the trial court.

Here, the two common law claims begin their quest without any statutory grant of permissibility. They must find a basis for inclusion. Here, the only basis is the Declaration. I found, and still find, that they fall clearly without its terms.

Second, the impermissible ratio methodology is especially suspect because it applies a mathematical approach to determining allowable attorney's fees based upon which claims were successful and which were unsuccessful. Breaking down the legal effort expended between successful and unsuccessful claims does not permit of such a rote approach, at least

---

[12] It is true that the core set of facts giving rise to the Bill of Complaint was the basis for all three counts. What is also true is that the same "core set" could not get common law claims of nuisance and trespass into the Declaration. Only if the claims could fit within the Declaration could they have even a hope of survival and the further hope of attorney's fees. They could not and did not.

[13] Hensley v. Eckerhart, 461 U.S. 424 (1983); Davidson v. Cook, 594 F. Supp. 418 (E.D. Va. 1984); Norwood v. Charlotte Mem. Hosp. & Medical Ctr., 720 F. Supp. 543 (W.D. N.C. 1989); Shasteen v. Olympus Gym, Inc., 121 F.3d 700 (4th Cir. 1997).

[14] Zabkowicz v. West Bend, 789 F.2d 540 (1985).

according to the dictates of *Hensley*.[15] Here, however, successful versus unsuccessful work — the proscribed ratio — need not be differentiated. All of the work was successful. Yet two thirds of it — absent proof to the contrary, and none was offered — had to do with claims for which attorney's fees would never be recoverable. The separation of fees is thus as to work for which no fees would ever have been recoverable, as opposed to work for which, if successful, fees might have been recovered. To the Court, this distinction is clear and differentiates this case from the impermissible ratio line of cases which must perforce divide fees expended on the basis of success versus failure as opposed to an exclusion of fees expended on work for which there would never be an award of attorney's fees, regardless of the result.

Additionally, it should be noted that this case, unlike those relied on by defendants, was resolved at the earliest possible stage in the proceedings, excepting possibly the entry of a nonsuit before an answer. Three simple counts were addressed by a sole demurrer. It is reasonable, and not arbitrary, for the Court to conclude that approximately one third of the work performed related to the legal arguments challenging each of the three claims, unlike a case involving extensive discovery, trial preparation, and trial, where it is not reasonable to say that the work performed is evenly divided among the claims. To assume that the time expended for this straightforward work was logically divided between the three separate counts — and, again no proof was offered to the contrary — makes eminent good sense.

In *Stupay v. Embassy of Oman*, 187 F.3d 631 (4th Cir. 1999), the trial court reduced — by applying flat percentage reductions of 50% and 33% respectively — attorney's fees incurred in preparing and presenting a Motion to Dismiss and a Motion for Summary Judgment. The across-the-board reductions were based on the fact that the court viewed some of the attorney's fees as unrelated to the fees incurred for the successful claims. The United States Court of Appeals affirmed.

Here, what amounts to a 67% reduction is based on the fact that two-thirds of the work in this litigation was to defend against common law claims for which no attorney's fees would be recoverable. Despite the asserted imprecision of this reduction, it strikes the Court as imminently precise, in keeping with the teaching of *Hensley* that "there is no precise rule or formula

---

[15] Compare, however, the 45% across-the-board reduction employed by the court in Davidson v. Cook, 594 F. Supp. 418 (1984). "But given the nature of plaintiff's work records, the Court must adopt some inevitably inexact method for separating out work on unsuccessful, unrelated claims." 594 F. Supp. at 426.

for making these determinations,"[16] and, most importantly, imminently fair, in what is, after all, an equitable action.

Finally, insofar as the issue of overall "success" of the matter is concerned, it must be observed again, as it was in the Court's initial opinion,[17] that this was not a complicated case and that the attorney's fees were too high. This was not a case in which extensive discovery was involved, numerous hearings occurred, discovery dispute generated court appearances were held — with one exception — or in which a single deposition was taken. In this case, landowners complained that adjacent landowners had planted trees too close to their property which now encroached onto their property and caused injury to them. Under settled Virginia law,[18] such an action may not be maintained. Under the Declaration, such an action may more arguably be maintained, but the Court ruled otherwise. The demurrer was sustained — in an argument lasting approximately fifteen minutes — and, with the exception of the attorney's fee aspect of the litigation, the matter was ended. For this, the attorney's fees submitted totaled over $20,000.00. That amount alone was too much.[19] Measuring all of this simply on the overall "success" achieved — which, after all, is nothing more than having dismissed what was shown to be warrantless lawsuit — does not, in the Court's opinion, conclusively put to rest the legitimacy of the amount of attorney's fees sought. Other factors have to be considered. These include, at the least, that two thirds of the claim was based on common law counts for which attorney's fees are not recoverable. That plain truth cannot be ignored.

[16] 461 U.S. 436, 437 (1983).

[17] Opinion Letter dated May 31, 2000.

[18] Smith v. Holt, 174 Va. 213, 5 S.E.2d 492 (1939).

[19] The attorney's fee collection aspect of the lawsuit added another $20,000.00 plus in fees.